United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2004

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
# for the Fifth Circuit

m 03-21127

JOHN BRENNAN,

Plaintiff-Appellant,

VERSUS

MERCEDES BENZ USA;
UNIVERSAL TECHNICAL INSTITUTE,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, SMITH, and STEWART,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiff John Brennan appeals a summary judgment in favor of defendants Mercedes Benz USA ("Mercedes") and United Technical Institute of Texas, Inc. ("UTI"). The district court dismissed Brennan's claim of employment discrimination under title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112-12117, because Brennan could not prove "the requisite employer-employee relationship to have standing to sue" under the ADA. Brennan further appeals the summary judgment on his claim of intentional infliction of emotional distress with respect to which the district court found that Brennan could not demonstrate the necessary conduct. Agreeing with both determinations, we affirm.

## I.

In February 1999, Brennan enrolled in UTI's entry-level automotive mechanic school. He suffers from learning disabilities in the form of dyslexia and attention deficit disorder. While at UTI, he requested and received numerous accommodations for his disabilities, including untimed tests, oral tests, color overlays, extra tutoring, and other assistance. He graduated from UTI in June 2000.

Although UTI's program focuses on basic entry-level automotive skills, its affiliate corporation, Custom Training Group, Inc. ("CTG"), provides more advanced training that focuses on automobiles from specific manufacturers. Brennan's performance at UTI earned him admission into CTG's Mercedes Benz Elite post-graduate training program (the "Elite Program"). CTG maintains separate staffs and facilities from UTI, and is also completely independent from Mercedes. Mercedes, however, does provide funding for CTG and works with CTG in establishing admissions and failure standards and developing a curriculum that will enable CTG's students to gain employment with a Mercedes Benz dealership.

Admission into the Elite Program, however, is not an offer of employment. In fact, program graduates never end up employed by Mercedes (a parts distribution entity), but rather seek employment from independent Mercedes Benz dealerships and service centers. Brennan admits that he never received wages, benefits, or compensation of any kind from UTI, CTG (which was not named as a defendant), or Mercedes.

On January 29, 2001, Brennan began his training in CTG's Elite Program under the impression that accommodations similar to those he received at UTI would be made available to him at CTG. Despite his requests for these accommodations, CTG refused to accommodate his disability, allegedly informing him, "We don't do that here." After failing an exam, Brennan was removed from the Elite Program on April 9, 2001.

Brennan filed a charge of employment discrimination with the Equal Employment Opportunity Commission and received a right to sue letter. He then sued, alleging violations of the ADA and intentional infliction of emotional distress The district court held that he lacked standing to bring his ADA claim and could not demonstrate evidence sufficient to support his claim of intentional infliction of emotional distress

## II.
### A.

We review a summary judgment *de novo* and are bound by the same standards as those employed by the district court. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371 (5th Cir. 2002). Namely, summary judgment is appropriate only where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the light most favorable to the non-movant, 'show that there is no genuine issue as to any material fact.'" *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Once the moving party has demonstrated that the non-moving party has no evidence such that a reasonable jury could support a verdict in its favor, the non-moving party must put forth specific facts that demonstrate a genuine factual issue for trial. *Id*.

### B.

Title I of the ADA prohibits discrimination

in employment-related decisions based on the disability of an otherwise qualified individual. Specifically, § 12112(a) provides, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.*

Brennan contends that this provision compels entities such as UTI and Mercedes to provide accommodations for his disabilities as part of the "job training" component of section 12112. Nevertheless, the district court held, and the defendants argue strenuously on appeal, that the ADA does not provide a cause of action where the plaintiff is not in an employment relationship with, or an applicant for employment with, the defendant. Because Brennan could not demonstrate such an employment relationship, the district court concluded that the ADA did not confer standing.

This court has yet to address the proper scope of standing under title I. Facing similar questions, other circuits have adopted the reading favored by the district court in this caseSS*i.e.,* requiring the existence of an employment relationship. *In McGuinness v. Univ. of N.M.*, 170 F.3d 974, 979 (10th Cir. 1998), the court rejected a suit by a medical student who claimed discrimination, because the lack of compensation received by students for their work foreclosed the possibility of finding the requisite employment relationship required to bring a claim under Title I.[1]

___

[1]Two district courts have concluded that plaintiffs situated as Brennan is (*i.e.,* lacking a
(continued...)

Under the text of the ADA, plaintiffs such as Brennan cannot state a viable claim. Section 12112 specifically discusses employment opportunities. Its only provision under which Brennan can attempt to find shelter is its reference to "job training." This phrase, however, when read in context, is equally unhelpful to Brennan.[2]

The entirety of § 12112 affords protection to "qualified individuals with a disability," in the context of employment decisions. Under Brennan's reading of the statute, every educational institution in which a student received tutelage that may one day be useful in the procurement of employment would be compelled by the ADA to provide the accommodations

___

[1](...continued)
active or prospective employment relationship) cannot state a viable claim under Title I. *See Collins v. OSF Healthcare Sys.*, 262 F. Supp. 2d 959 (C.D. Ill. 2003) (rejecting claim of a spouse of an allegedly discriminatorily-treated former employee); *Foote v. Folks, Inc.*, 864 F. Supp. 1327, 1328 (N.D. Ga. 1994) (concluding that the legislative history of the ADA indicates it was intended to protect job applicants and employees). Similarly, other circuits have rejected claims under Title I of the ADA where the plaintiff was a *former* employee and no longer was an applicant for that position or was unable to perform the essential job functions as the "qualified individual" provision of the statute requires. *See, e.g., Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1110 (9th Cir. 2000).

[2] *Cf. Deal v. United States*, 508 U.S. 129, 132 (1993) (noting that it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used").

Brennan sought at CTG. We reject this reasoning.

Therefore, although it is obvious that Brennan and others are enrolled in CTG's Elite program with an eye toward receiving training that would help them gain employment from a small group of specific employers (*i.e.,* Mercedes Benz dealerships and service centers), it is equally manifest that no such employment relationship yet existed. As noted above, Brennan never received compensation for his "work" at the Elite program (either from Mercedes, UTI, or even CTG), nor did he ever apply for employment with any of the named defendants. As a result, district court was entirely correct in granting summary judgment with respect to Brennan's ADA claim.

Brennan's brief makes repeated references to statutory provisions that neither formed the basis of his complaint nor have any relevance to its allegations. Brennan's reliance, therefore, on the Individual with Disabilities in Education Act, title II of the ADA, and the Rehabilitation Act of 1973 is therefore misplaced.[3]

### C.

In Texas, for a plaintiff to prevail on a claim of intentional infliction of emotional distress, he must demonstrate that the defendant acted intentionally or recklessly, that the conduct was extreme and outrageous, and that the conduct caused him severe emotional distress. *Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 610 (Tex. 2002). In determining whether alleged conduct is sufficiently outrageous to fall under the ambit of the cause of action, the Texas courts have warned that the conduct must have been "'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d).[4]

Brennan claims that defendants' conduct meets this "utterly intolerable"[5] level of misbehavior in that he was not offered the accommodations for his disability that he believed were necessary to his success. As a result, Brennan alleges he suffered emotional distress because, in his own words, "I have lost my chances of what I wanted to do with my life to work on Mercedes Benz cars."

The district court appears quite correct in its conclusion that Brennan has been unable to demonstrate any evidence suggesting the sort of "severe" distress that is required for recovery under this cause of action.[6] But, putting the nature of the alleged distress aside, Brennan cannot demonstrate a scintilla of evidence suggesting the defendants' conduct constituted

---

[3] *See* 20 U.S.C. § 1400 *et seq.* (does not apply to post-secondary institutions); 42 U.S.C. §§ 12131-12134 (deals solely with "public entities," defined as instrumentalities of state of local governments); 29 U.S.C. §§ 701-795 (applies only to entities receiving federal financial support).

[4] *See also Hughes Training, Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001) (recognizing Texas's requirements for claims of intentional infliction of emotional distress).

[5] *Hughes Training*, 254 F.3d at 594 (citing *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 13 (Tex. App.SSTyler 2000, pet. denied)).

[6] *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999) (requiring emotional distress that is "so severe that no reasonable person could be expected to endure it").

anything near the sort of outrageous behavior needed to support a claim for intentional infliction of emotional distress

Brennan concedes that UTI granted him the accommodations he desired while he was a student in UTI's entry-level training program, and Brennan's brief does not even make a cursory attempt to address this deficiency, so summary judgment was proper. Additionally, because Mercedes's participation in the CTG Elite Program is limited to establishing standards and developing curriculum, Brennan cannot even muster evidence demonstrating contact with Mercedes, let alone contact of the outrageous sort necessary to support his claim.

AFFIRMED.