Rose M. PERCHES, Plaintiff,

v.

ELCOM, INC., Defendant.

No. EP–04–CA–0228–KC.

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 16, 2007.

Michael Rudy Wyatt, Scherr & Legate, PLLC, El Paso, TX, for Plaintiff.

Mark R. Flora, Ashlee Mann Ligarde, Constangy, Brooks & Smith, LLC, Austin, TX, for Defendant.

## *ORDER*

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant's Motion for Summary Judgment ("Motion"). For the reasons set forth below, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

The following background is derived from the undisputed facts as found in the parties' motions in support of and in opposition to summary judgment in the present employment discrimination action.

Defendant Elcom, Inc. manufactures automotive components and wire harnesses for vehicles. Def.'s Proposed Undisputed Facts ¶ 1 ("Def.'s Facts"). Plaintiff Rose Perches, an African–American, first worked in Defendant's El Paso manufacturing facility as a temporary agency employee from June to December 1998. *Id.* ¶ 2. In December 1998, Plaintiff accepted permanent, full-time employment with Defendant in the Packing Department. *Id.* ¶ 5. In August 1999, she accepted a position as a Quality Control ("QC") inspector. *Id.* ¶ 22. As a QC inspector, Plaintiff inspected molded parts to ensure quality. *Id.* ¶ 26. During her employment, Plaintiff filed six charges with the EEOC, alleging racial discrimination, harassment, and retaliation. Def.'s Mem. in Supp. of Mot. for Summ. J. 1 ("Def.'s Mem."). The EEOC dismissed all of these charges. *Id.*

Plaintiff filed her first EEOC charge against Defendant in June or July 1999, alleging race discrimination and retaliation. Def.'s Facts ¶ 20. She alleged race discrimination because a Hispanic co-worker had told a joke about Hispanics. *Id.*

¶¶ 8, 20. She alleged retaliation, arguing that after she complained to Human Resources ("HR") about the Hispanic joke, Defendant retaliated against her by giving her an unfavorable performance review. *Id.* ¶ 20. The performance review in question rated Plaintiff as meeting or exceeding expectations in all areas, but said that she needed to improve her communication with others. *Id.* ¶¶ 13, 15. The EEOC dismissed Plaintiff's first charge in March 2000, and Plaintiff did not exercise her right to sue Defendant within 90 days. *Id.* ¶ 25.

Plaintiff filed her second EEOC charge in March 2001. *Id.* ¶ 36. In this charge, she alleged that QC Team Leader Lorenzo Ortiz ("Ortiz") had promised her an "assistant team leader" position, but then gave that position to another employee. *Id.* ¶ 37. Plaintiff has not stated who became the assistant team leader, or what responsibilities were associated with that position. *Id.* ¶ 39; Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 41 ("Pl.'s Resp. to Def.'s Facts"). Defendant alleges that it does not have an "assistant team leader" position, and, even if it did, Ortiz would not have been authorized to fill it. Def.'s Facts ¶ 41. Plaintiff's second EEOC charge also alleged unspecified harassment by her co-workers. *Id.* ¶ 43. The EEOC dismissed Plaintiff's second charge in May 2002, and Plaintiff did not exercise her right to sue Defendant within 90 days. *Id.* ¶ 45.

Plaintiff filed her third EEOC charge in April 2002. *Id.* ¶ 50. In it, she stated that she had been subject to retaliation for her then-pending second EEOC charge, because she had received job duties that other QC personnel were not required to perform. *Id.* ¶ 52. However, she did not know what those duties were. *Id.* Second, Plaintiff alleged that other workers were using "racial terms" such as "partes neg-ras" to refer to machine parts. *Id.* ¶ 54. However, Plaintiff admitted that "partes negras" means "black parts" in Spanish, and that she and her co-workers inspected black parts as part of their job duties. *Id.* ¶ 55; Pl.'s Resp. to Def.'s Facts ¶ 55. Third, Plaintiff alleged that her co-worker, Helen Trujillo, had sabotaged Plaintiff's start up samples. Def.'s Facts ¶¶ 47, 59. The EEOC dismissed Plaintiff's third charge in September 2002, and Plaintiff did not exercise her right to sue Defendant within 90 days. *Id.* ¶ 62.

Plaintiff filed her fourth EEOC charge in February 2003. *Id.* ¶ 80. In it, she complained that she had been improperly moved to an inconvenient shift, that her work environment had been sabotaged by Estela Saenz, and that a machine used by QC inspectors was not repaired in a timely manner. *Id.* ¶ 81. The EEOC dismissed this charge in June 2003, and Plaintiff did not exercise her right to sue Defendant within 90 days. *Id.* ¶ 85.

Between her fourth and fifth EEOC charges, Plaintiff made several complaints to HR. In April 2003, she complained that her co-workers had hidden fans from her (Defendant provides fans as a courtesy to its employees while they perform their jobs). *Id.* ¶ 86. She also complained that her co-workers had deliberately pressed emergency stop buttons on a machine to prevent her from doing her job. *Id.* Defendant claims that HR looked into these complaints and found them to be without merit. *Id.* ¶ 87. Plaintiff denies that HR looked into the complaints. Pl.'s Resp. to Def.'s Facts ¶ 87.

During this same time frame, Defendant alleges that several of Plaintiff's co-workers complained to Mary Ann Hernandez ("Hernandez"), an HR generalist employed by Defendant, that Plaintiff was difficult to get along with. Def.'s Facts ¶ 88. Plaintiff alleges that she was unaware of these

complaints. Pl.'s Resp. to Def.'s Facts ¶ 88. Hernandez called Plaintiff in to discuss the co-workers' complaints, and told Plaintiff that if she was causing any problems with her co-workers to please stop doing so. Def.'s Facts ¶ 89.

Shortly after this meeting, Plaintiff submitted to Hernandez an envelope containing a series of handwritten complaints going back to 2002. *Id.* ¶ 90. The envelope included a complaint that a co-worker had pulled Plaintiff's hair, but subsequently apologized. *Id.* ¶ 92. Because the co-worker had apologized, Hernandez considered the matter closed. *Id.* ¶ 93. Plaintiff also complained that her co-worker, Lorena Lopez, had asked Plaintiff whether her pony tail was real. *Id.* ¶ 94. Hernandez did not believe it was necessary to investigate this complaint. *Id.* ¶ 95. Plaintiff complained that three co-workers said in Spanish that she had a "big butt." *Id.* ¶ 98. Hernandez interviewed the co-workers, who denied making the comment. *Id.* ¶ 99. Plaintiff complained that a co-worker told Plaintiff that due to his friendship with an African–American male, he could refer to that person as "Nigga." *Id.* ¶ 100; Pl.'s Disputed Issues of Material Fact ¶ 1.L ("Pl.'s Facts"). Hernandez interviewed the co-worker, who did not remember making the comment, but doubted that he had because he understood that Plaintiff was sensitive to racial jokes and comments. Def.'s Facts ¶ 101. Plaintiff also complained about several other personal disputes with her co-workers, but Hernandez considered all of these complaints resolved. *See id.* ¶¶ 96–105.

Plaintiff filed her fifth EEOC charge in August 2003, alleging discrimination and retaliation. *Id.* ¶ 117. First, she complained that Hernandez had retaliated against her by stating that she would reopen the investigation into complaints against Plaintiff if Plaintiff pressed forward with complaints against her co-workers. *Id.* ¶ 118. Second, she complained that Defendant had retaliated against her by not promoting her to Supervisor of the Molding Department in May 2003. *Id.* ¶ 119. Plaintiff claims that she had experience supervising thirteen machine operators on plastic injection molding machines prior to her employment with Defendant. Pl.'s Facts ¶ 7. According to Defendant, Plaintiff was not promoted because she lacked the technical manufacturing skills needed in the Molding Department and did not have prior experience as a supervisor. Def.'s Facts ¶ 121. Third, Plaintiff complained that in June 2003, she received an unfavorable performance review from Miguel Martinez. *Id.* ¶ 109; Pl.'s Aug. 2003 EEOC Charge. Martinez had rated Plaintiff as meeting expectations in every category except for interpersonal skills, in which she was rated as needing improvement. Def.'s Facts ¶ 109. Martinez noted in the review that Plaintiff needed to work more effectively with others. *Id.* ¶ 111. Fourth, Plaintiff complained that QC Team Leader Lorena Lopez had called Plaintiff a "troublemaker." Def.'s Facts ¶ 122. However, Plaintiff admits that she does not remember the context in which Lopez used the word. *Id.* ¶ 123; Pl.'s Resp. to Def.'s Facts ¶ 123. Fifth, Plaintiff complained about her co-workers' use of the word "negrita" to describe the black parts used in production. Def.'s Facts ¶ 124. Sixth, Plaintiff complained that while two co-workers walked past her work station, one said to the other the word "pistola," which means "pistol" in Spanish. *Id.* ¶ 126. However, Plaintiff admits that she does not remember the context in which the word was used, nor does she know why she believes the comment was directed at her. *Id.* ¶ 127. Seventh, Plaintiff complained that she feared for her safety in the workplace; this complaint was based upon the "pistola" comment and over-

hearing an unidentified co-worker saying in Spanish that he had a problem with and wanted to kill an unidentified female. *Id.* ¶ 128. Plaintiff admits that the comment was not made to her and that she does not know why she believes it was intended for her. *Id.* ¶ 129; Pl.'s Resp. to Def.'s Facts ¶ 129.

While her fifth EEOC charge was pending, Plaintiff made several complaints to HR. *See* Def.'s Facts ¶ 130. Plaintiff complained that two co-workers (one of whom later apologized) commented that Plaintiff's work station was moved because no one liked her. *Id.* ¶ 131. Plaintiff complained that one co-worker made a comment to another co-worker about lips, which Plaintiff characterized as making fun of the shape and size of her lips. *Id.* ¶ 133. Plaintiff complained that a co-worker once "called [her] by the 'N' word in passing." Pl.'s Dep. 111:18–21; Def.'s Facts ¶ 134. Plaintiff complained that a co-worker once called her a "f——ing jerk." Def.'s Facts ¶ 140. Plaintiff complained that a newly-hired employee tried to terrorize her by telling her to "turn around" in Spanish. *Id.* ¶ 141. Plaintiff complained that another co-worker tried to intimidate her by saying the word "boom" as she passed by Plaintiff's work station. *Id.* ¶ 143. According to Defendant, HR looked into each of Plaintiff's complaints and was unable to substantiate that many of them had occurred or that any employee had mistreated or harassed Plaintiff on the basis of her race. *Id.* ¶ 144. Plaintiff denies that HR looked into her complaints satisfactorily. Pl.'s Resp. to Def.'s Facts ¶ 144.

The EEOC dismissed Plaintiff's fifth charge in March 2004 and included a letter explaining the reasons for the dismissal. Def.'s Facts ¶ 147. On June 5, 2004, Plaintiff sent a *pro se* letter to this Court saying that she intended to bring a lawsuit prem-ised upon her fifth EEOC charge. *Id.* ¶ 148. Plaintiff's first Complaint reiterated claims from the fifth EEOC charge, but added an allegation that she was required to take a drug test after she told a co-worker what kind of diet pill she was taking. *Id.* ¶¶ 149–50.

Plaintiff filed her sixth EEOC charge in January 2005. *Id.* ¶ 174. In the charge, Plaintiff complained first that in June 2004, she received a "D" on the interpersonal skills section of her annual performance review. *Id.*; Pl.'s Jan. 2005 EEOC Charge. Second, Plaintiff complained that in June 2004, she was not selected for the QC Team Leader position. Def.'s Facts ¶¶ 167, 174. Defendant ultimately selected Lynda Pigram, an African–American, for the position. *Id.* ¶ 170. Defendant had determined that Pigram was the most qualified candidate for the job, because she had worked in the QC department since 1998 and had previously held the QC Team Leader position until it was eliminated during a company-wide reorganization in 1999–2000. *Id.* ¶ 172. In her charge, Plaintiff alleged that her poor performance review and her non-selection for the QC leader position were due to discrimination and retaliation. *Id.* ¶ 174.

On June 3, 2005, Plaintiff filed an Amended Complaint with this Court, combining claims from her fifth and sixth EEOC charges with complaints she had made to HR. *Id.* ¶ 185; *see* Pl.'s Second Am. Compl. ("Am. Compl."). In the Amended Complaint, Plaintiff alleged retaliation in the form of negative treatment by co-workers, as well as failure to be promoted. Am. Compl. ¶ 5. Plaintiff complained that co-workers had made jokes about her race and touched her hair. *Id.* ¶ 6. Plaintiff complained that her co-workers had used the term "negrita" to refer to her, and that employees had made vague death threats toward her. *Id.* Plaintiff

reiterated the first complaint from her fifth EEOC charge, alleging that Hernandez had threatened to reopen investigations into complaints about Plaintiff from Plaintiff's co-workers. *Id.* Plaintiff also complained that Defendant's conduct constituted intentional infliction of emotional distress. *Id.* ¶ 5.

On October 11, 2006, Defendant filed its Motion for Summary Judgment. Def.'s Mem. 11. On October 27, 2006, Plaintiff filed her Response to the Motion for Summary Judgment. Pl.'s Resp. to Mot. for Summ. J. 5 ("Pl.'s Resp.").

## II. DISCUSSION

### A. Objection to Declaration of Mary Ann Hernandez

In her Response to the Motion for Summary Judgment, Plaintiff objects to the Declaration of Mary Ann Hernandez in its entirety for failure to comply with 28 U.S.C. § 1746, by failing to set out the date on which the declaration was executed. Pl.'s Resp. 1 n. 1. Plaintiff is correct that Hernandez's declaration does not specify the date on which it was executed. *See* Decl. of Mary Ann Hernandez. However, after Plaintiff filed her Response, Defendant submitted the Supplemental Declaration of Mary Ann Hernandez. Def.'s Resp. in Opp'n to Pl.'s Proposed Undisputed Facts 1. In the Supplemental Declaration, dated November 8, 2006, Hernandez stated under penalty of perjury that she had made the prior declaration on October 10, 2006. Supplemental Decl. of Mary Ann Hernandez 1. Because the Supplemental Declaration corrects the error in the earlier Declaration, the Court **OVERRULES** Plaintiff's objection.

### B. Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Id.* However, all evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Id.* at 248–50, 106 S.Ct. 2505.

### C. Construction of Plaintiff's Claims

In its Memorandum in Support of the Motion for Summary Judgment, Defendant argues that Plaintiff's Amended Complaint "[does] not clearly specify the nature of and basis for her claims." Def.'s Mem. 2 n. 1. Therefore, Defendant "has

done its best to separate her claims/allegations into the categories of 'disparate treatment,' 'retaliation' and 'harassment.'" *Id.* First, Defendant treats Plaintiff's unfavorable 2003 performance review and her failure to be promoted to Molding Department Supervisor as disparate treatment race discrimination claims. *Id.* at 2, 4. Second, Defendant treats Plaintiff's unfavorable 2004 performance review, her failure to be promoted to QC Team Leader, and the alleged threat by Mary Ann Hernandez as retaliation claims. *Id.* at 6–7. Third, Defendant treats Plaintiff's various complaints about treatment by her co-workers as a hostile work environment (or racial harassment) claim. *Id.* at 8.

The Court agrees with Defendant's argument that Plaintiff's Amended Complaint does not clearly specify her claims. For instance, Plaintiff says that "Defendant failed to promote Plaintiff to a supervisory position," but does not specify whether she is referring to the position as Molding Department Supervisor or the position as QC Team Leader. Am. Compl. ¶ 7. Moreover, Plaintiff never explicitly mentions the unfavorable performance reviews in the Amended Complaint, nor does she explicitly raise a claim of hostile work environment against Defendant.

However, the Court disagrees with Defendant's argument that Plaintiff's unfavorable 2003 performance review and failure to be promoted to Molding Department Supervisor should be treated as disparate treatment discrimination claims, as opposed to retaliation claims. Plaintiff specifically alleged in her fifth EEOC charge that these two incidents occurred in retaliation for her prior complaints (even though she did not make this clear in her Amended Complaint). Pl.'s Aug. 2003 EEOC Charge. There is no reason for the Court to construe one poor performance review and one failure to promote as disparate treatment claims, while construing another poor performance review and another failure to promote as retaliation claims. At any rate, claims of disparate treatment would be unsupportable in the instant case, because Plaintiff has not identified a similarly situated employee who received more favorable treatment. *See* Def.'s Mem. 4 (citing *Okoye v. University of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512–13 (5th Cir.2001)). However, Plaintiff has clearly alleged retaliation in the related EEOC claims.

The Court has liberally construed Plaintiff's Amended Complaint to contain the following claims:

(1) Hostile work environment (or racial harassment), based on negative treatment by co-workers. *See* Am. Compl. ¶¶ 6–7.

(2) Retaliation, based on the following: the unfavorable 2003 and 2004 performance reviews, Plaintiff's failure to be promoted to both Molding Department Supervisor and QC Team Leader, and the alleged threat by Mary Ann Hernandez. *See id.*

(3) Intentional infliction of emotional distress. *Id.* ¶ 5.

### D. Hostile Work Environment

The Court has construed Plaintiff's Amended Complaint to contain a claim for hostile work environment, or racial harassment. Although Plaintiff does not expressly bring a claim for hostile work environment, she does mention "racial harassment," and she alleges the same type of facts that could support a hostile work environment claim. *See id.* ¶¶ 6–7.

Defendant argues that Plaintiff's hostile work environment claim is premised only upon the following allegations: (1) Lorena Lopez called Plaintiff a "troublemaker," (2) co-workers used the word "negrita" to describe black production parts, (3) a co-

worker said the word "pistola" as she passed Plaintiff's work station, (4) a coworker said in Spanish that he wanted to kill an unidentified female, and (5) Plaintiff was required to take a drug test. Def.'s Mem. 9. Defendant further argues that Plaintiff may not recover for any conduct that occurred prior to her August 2003 EEOC charge, because those claims are time-barred. *Id.* at 9 n. 4.

Plaintiff responds that the record "shows a long history of comments about Plaintiff's skin color, lips, hair, and physical appearance." Pl.'s Resp. 4. Plaintiff further argues that the alleged incidents must not be measured in isolation. *Id.* (citing *Clark County School Dist. v. Breeden,* 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).

■ In order to establish a hostile work environment claim based on racial discrimination, a plaintiff must show the following: (1) the plaintiff belongs to a protected group, (2) the plaintiff was subjected to unwelcome harassment, (3) the harassment was based on race, and (4) the harassment affected a term, condition, or privilege of employment. *Celestine v. Petroleos de Venez. SA,* 266 F.3d 343, 353 (5th Cir.2001). In determining whether a workplace constitutes a hostile work environment, a court will consider several factors, including (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the discriminatory conduct is physically threatening or humiliating, or merely an offensive utterance, and (4) whether the discriminatory conduct unreasonably interferes with an employee's work performance. *Ramsey v. Henderson Postmaster Gen.,* 286 F.3d 264, 268 (5th Cir.2002). The plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir.2003) (citing *Harris v. Forklift*

*Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ Occasional comments, discourtesy, rudeness, or isolated incidents, unless extremely serious, are insufficient to establish severe and pervasive harassment. *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir.1999). Moreover, the Fifth Circuit has held that "[a]ctionable harassment must involve racially discriminatory intimidation, ridicule and insults." *Felton v. Polles,* 315 F.3d 470, 485 (5th Cir.2002). Such harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Ramsey,* 286 F.3d at 268).

■ Because hostile work environment claims may involve repeated conduct, rather than discrete acts, a court may consider acts that occurred outside of the statutory filing period for EEOC charges in evaluating a hostile work environment claim. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 115–16, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("Provided that an act contributing to the claim occurred within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."); *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 279 (5th Cir.2004).

■ Defendant's argument that Plaintiff is time-barred from alleging incidents that occurred prior to her August 2003 EEOC charge is incorrect. As the Supreme Court explained in *Morgan,* a court may consider the entire time period of the hostile environment. *Morgan,* 536 U.S. at 115–16, 122 S.Ct. 2061. Nevertheless, even considering the facts outside of Plaintiff's fifth and sixth EEOC charges, Plaintiff still cannot establish severe or pervasive harassment. First, the alleged

discriminatory conduct did not significantly interfere with Plaintiff's work performance. In her Amended Complaint, Plaintiff herself stated, "At all times relevant hereto, Plaintiff's job performance was satisfactory." Am. Compl. ¶ 5. In addition, the allegations in Plaintiff's complaints to HR and her EEOC charges consisted of occasional offensive comments, discourtesy, or rudeness. This includes the comments about Plaintiff's hair and lips, as well as Lorena Lopez's comment that Plaintiff was a "troublemaker." Though offensive utterances, these comment are not sufficiently severe or pervasive to establish a hostile work environment.

As for the other incidents that Plaintiff alleged in her fifth EEOC charge (hearing the word "pistola," co-workers' use of the word "negrita" to refer to machine parts, and hearing a co-worker say he wanted to kill an unidentified female), Plaintiff has put forth no evidence that these comments were directed at her other than her own belief. *See* Def.'s Facts ¶¶ 122–29. It is well established that a plaintiff's subjective belief of discriminatory meaning is not evidence of discrimination. *Roberson v. Alltel Info. Serv.*, 373 F.3d 647, 654 (5th Cir.2004). Likewise, the Hispanic joke and the co-worker's comment that he could refer to his friend as "Nigga," while misguided, do not show racially discriminatory intimidation, ridicule, or insult to Plaintiff herself.

Plaintiff's most serious allegation is that a co-worker referred to her as "N word." Assuming this allegation is true, the statement was clearly a severe and reprehensible insult, warranting serious consequences. However, such a comment, said only once and accompanied only by the occasional rudeness and discourtesy Plaintiff has alleged, cannot sustain the "severe and pervasive" prong of a hostile work environment claim. *See Faragher v. City*

*of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), (quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971)) ("Mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms or conditions of employment to violate Title VII."). Taken as a whole, the incidents Plaintiff alleges do not constitute severe and pervasive harassment.

Plaintiff has failed to show that she was subjected to severe and pervasive racial harassment. Accordingly, summary judgment is entered for Defendant on Plaintiff's hostile work environment claim.

### E. Retaliation

In her Amended Complaint, Plaintiff has alleged retaliation in the form of negative treatment by co-workers, as well as failure to be promoted. Am. Compl. ¶ 5. Defendant has moved for summary judgment on Plaintiff's retaliation claims. Def.'s Mem. 6–8.

In analyzing Title VII retaliation claims, courts in the Fifth Circuit use a modified version of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Rios v. Rossotti,* 252 F.3d 375, 380 (5th Cir.2001). To establish a prima facie case of retaliation, a plaintiff must show the following: (1) that she engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir.2002) (internal citation omitted). "The causal link required by the third prong of the prima facie case does not rise to the level of a 'but for' standard." *Id.* (internal citation omitted). Still, the plaintiff must produce some evidence of a causal link between the protect-

ed activity and the adverse employment action to establish a prima facie case of retaliation. *Ackel v. Nat'l Comm'n, Inc.,* 339 F.3d 376, 385 (5th Cir.2003). As part of the causation prong, a plaintiff must show that the decisionmaker who committed the adverse employment action was aware of the plaintiff's protected activity. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 884 (5th Cir.2003). "[I]n determining whether an adverse employment action was taken as a result of retaliation, the focus is on the final decisionmaker." *Ackel,* 339 F.3d at 385 (quoting *Gee,* 289 F.3d at 346).

If a plaintiff can establish a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. *Gee,* 289 F.3d at 345. If the defendant provides a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff, who must prove that the defendant's offered reason is a pretext for the real, discriminatory reason. *Id.* To meet this burden, a plaintiff must show that the adverse employment action would not have occurred "but for" the protected activity. *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 685 (5th Cir.2001). "The plaintiff must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Id.* (internal quotation omitted).

### 1. Performance reviews

Defendant has moved for summary judgment on Plaintiff's retaliation claims regarding her unfavorable 2003 and 2004 performance reviews. Def.'s Mem. 4, 6. Although Plaintiff did not explicitly mention the performance reviews in her Amended Complaint, she did use them as grounds for retaliation claims in her fifth and sixth EEOC charges. In both performance reviews, Plaintiff was rated as meeting or exceeding expectations in all areas, except for interpersonal skills, in which she was rated as needing improvement, receiving a letter grade of "D."

Defendant argues that even if Plaintiff can establish a prima facie case of retaliation with regard to the 2004 performance review, Defendant has articulated a legitimate, non-discriminatory action for the review: the company's long-held perception that Plaintiff's interpersonal skills needed improvement. *Id.* at 7. Defendant further argues that Plaintiff has failed to point to any evidence of pretext. *Id.*

Plaintiff argues that she can show evidence of pretext because Plaintiff's first evaluation noted that she was a "natural team leader," her grades always went down when she complained about harassment, she never received discipline for her conduct, and a supervisor, Nick DiCintio, admitted that without discipline, she should not be downgraded. Pl.'s Resp. 3.

The Court agrees with Defendant. As an initial matter, Plaintiff cannot establish a prima facie case of retaliation, because she has produced no evidence that Jesus Martinez or Aracely Ortiz, the supervisors who wrote the reviews, were aware of Plaintiff's HR complaints or her EEOC charges. *See Manning,* 332 F.3d at 884.

██ Even if Plaintiff could establish a prima facie case, Defendant has produced evidence of a legitimate, non-discriminatory reason for the unfavorable performance reviews: the company's perception that Plaintiff's interpersonal skills needed improvement. This issue is addressed in the same 1999 performance review that Plaintiff relies on as evidence of her leadership skills. The notes to the "Interpersonal Skills" section (for which Plaintiff received a "C" that year) actually read, "Rosie is a team leader. She works with others, although she has had some difficulties [sic] with other co-workers, that being [sic] taken care of. Needs to improve communi-

cate [sic] about work." Pl.'s 1999 Performance Review 2. Defendant's claim that Plaintiff had poor interpersonal skills is also supported by Plaintiff's co-workers' complaints to HR during 2002 and 2003.

Plaintiff's evidence of pretext is insufficient to show that "but for" her HR complaints and EEOC charges, she would have received favorable performance evaluations in 2002 and 2003. As mentioned above, Plaintiff's 1999 performance evaluation, which she relies upon as evidence of her leadership skills, stated that she needed to improve her communication with her co-workers. Moreover, Plaintiff's claim that her grades always went down when she complained about harassment is simply untrue. Plaintiff began complaining to HR and filing charges with the EEOC as early as 1999, the first year of her employment. But her grade in interpersonal skills did not go down from a "C" to a "D" until 2002. Def.'s Facts ¶¶ 13, 27, 32, 63. Finally, the fact that Plaintiff was never disciplined for her problems with interpersonal skills does not disprove Defendant's claim that her supervisors thought she had problems with interpersonal skills, or the fact that her co-workers complained about her. In other words, Plaintiff is unable to rebut Defendant's substantial evidence regarding her interpersonal skills.

Plaintiff cannot establish a prima facie case of retaliation in her performance reviews. Even if she could, Defendant has offered a legitimate, non-discriminatory reason for the reviews. Plaintiff has not produced evidence of causation that would show pretext. Accordingly, summary judgment is entered for Defendant on Plaintiff's claims regarding her performance evaluation.

### 2. Failure to promote to Molding Department Supervisor

Defendant has moved for summary judgment on Plaintiff's claim that Defendant failed to promote her to Molding Department Supervisor. Def.'s Mem. 2. Defendant treats this claim as a disparate treatment race discrimination claim. *Id.* Defendant argues that Plaintiff cannot establish a prima facie case of discrimination, because she does not know who was promoted into the position, and thus cannot show that Defendant promoted an applicant outside of her protected class. *Id.* Defendant further argues that even if Plaintiff can establish a prima facie claim of discrimination, Defendant has offered a legitimate, non-discriminatory reason for refusing to promote Plaintiff: that she lacked necessary manufacturing skills and prior supervisory experience. *Id.* 2–3. Defendant argues that Plaintiff cannot produce sufficient evidence of pretext. *Id.*

In her Response, Plaintiff argues that Defendant's legitimate, non-discriminatory reason is pretextual because Plaintiff had experience as an injection molding supervisor while she was working at another company. Pl.'s Resp. 1–2. However, she does not respond to Defendant's argument that she must identify the person promoted into the position. *See id.*

As mentioned above in section II.B., the Court has construed Plaintiff's failure to promote claims as retaliation claims. As part of a prima facie case of retaliatory failure to promote, Plaintiff must show that the person who made the promotion decision was aware of her protected activity (here HR complaints and EEOC charges). *See Manning,* 332 F.3d at 884. Plaintiff has not identified the person who made the promotion decision, and has not alleged that this person knew about her protected activity. Therefore, she cannot establish a prima facie case of retaliatory failure to promote. The Court need not reach the question of whether Defendant's alleged non-discriminatory reason for not promoting Plaintiff was pretextual.

Because Plaintiff cannot establish a prima facie claim of retaliation regarding Defendant's failure to promote her to Molding Department Supervisor, summary judgment is entered for Defendant on this claim.

### 3. Failure to promote to QC Team Leader

Defendant has moved for summary judgment on Plaintiff's claim that Defendant retaliated against her by not promoting her to QC Team Leader. Def.'s Mem. 6. Defendant assumes on summary judgment that Plaintiff can establish a prima facie case of retaliation. *Id.* However, Defendant alleges a legitimate, non-discriminatory reason for not promoting Plaintiff to QC Team Leader: that it thought Lynda Pigram, an African–American, was best qualified for the position because she had previously held the QC Team Leader position before it was eliminated during a company-wide reorganization in 1999–2000. *Id.*

Plaintiff argues that she was not considered for the position of QC Team Leader because of her poor performance evaluations in 2003 and 2004, which she believes were retaliatory. Pl.'s Resp. 3. She does not, however, address Defendant's argument that Lynda Pigram was the best candidate for the job because she had previously held it. *See id.*

Once again, Plaintiff fails to establish a prima facie case because she does not identify who made the promotion decision, or allege that this person knew about her HR complaints and EEOC charges. *See Manning,* 332 F.3d at 884. Even if Plaintiff could establish a prima facie case, Defendant has offered a legitimate, non-discriminatory reason for promoting Lynda Pigram. *See Price v. Federal Express Corp.,* 283 F.3d 715, 721 (5th Cir.2002) (employer's belief that successful candidate possessed superior qualifications is a legitimate, non-discriminatory reason for pro-

motion). Plaintiff has offered no evidence showing that this reason is a pretext, other than the conclusory assertion that her failure to be hired was based on her retaliatory performance reviews. She certainly has not offered sufficient evidence to show that she would have been promoted to QC Team Leader "but for" her HR complaints and EEOC charges. Accordingly, summary judgment is entered for Defendant on Plaintiff's claim that she was not promoted to QC Team Leader.

### 4. Threat by Mary Ann Hernandez

In her Amended Complaint, Plaintiff alleged that HR Generalist Mary Ann Hernandez retaliated against her by threatening to re-open investigations into complaints about Plaintiff if Plaintiff continued to complain to HR. *See* Am. Compl. ¶ 7. Defendant has moved for summary judgment on this claim. Def.'s Mem. 7. Defendant argues that such a threat, even if it occurred, would not constitute an adverse employment action. *Id.* However, Defendant does not elaborate on this argument or provide any clarifying case law. *See id.* Plaintiff does not respond to this argument. *See* Pl.'s Resp.

The Supreme Court recently considered the term "adverse employment action" in *Burlington Northern and Santa Fe Ry. Co. v. White,* —— U.S. ——, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). In *Burlington Northern,* the Court held that Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 2414. The Court set out a test "to describe the level of seriousness to which this harm must rise before it becomes actionable retaliation." *Id.* The Court adopted the test that had previously been used in the Seventh and District of Columbia Circuits, requiring a plaintiff to show that the action "might well have dissuaded a reasonable worker

from making or supporting a charge of discrimination." *Id.* The Court adopted this definition because it thought it was "important to separate significant from trivial harms." *Id.* at 2415. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and all employees experience." *Id.*

■ Plaintiff does not allege that Mary Ann Hernandez actually re-opened the investigations into Plaintiff for continuing to complain to HR. Nor does she allege that she was disciplined for her conduct, or that any complaints were added to her record that were not already there beforehand. Moreover, the alleged threat did not deter Plaintiff, who continued filing HR complaints and EEOC charges until the end of her employment. In short, Plaintiff has not shown the presence of any injury or harm. Therefore, Plaintiff has not established that the threat was an adverse employment action under *Burlington Northern,* which makes it clear that Title VII only protects against actions that "produce an injury or harm." *Id.* at 2414. This Court does not hold that a threat could never constitute an adverse employment action. But the Supreme Court is clear that the threat must produce some kind of injury or harm in order to be actionable under Title VII.

Plaintiff has not shown that she suffered an adverse employment action with respect to Mary Ann Hernandez' alleged threat. Accordingly, summary judgment is entered for Defendant on Plaintiff's claim regarding that threat.

### F. Intentional Infliction of Emotional Distress

In her Amended Complaint, Plaintiff alleges that "Defendant treated Plaintiff in a manner so degrading as to constitute intentional infliction of emotional distress." Am. Compl. ¶ 5. However, Defendant has not moved for summary judgment on this claim. *See* Def.'s Mem.

Intentional infliction of emotional distress is a valid state law claim in Texas. *See Brennan v. Mercedes Benz USA,* 388 F.3d 133, 136 (5th Cir.2004) (citing *Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 610 (Tex.2002)). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine, such as judicial economy, convenience, fairness, and comity, all point toward this Court's declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The general rule in the Fifth Circuit is to dismiss state law claims when the federal claims they supplement are disposed of before trial. *Parker & Parsley Petroleum Co. v. Dresser Indust.,* 972 F.2d 580, 585 (5th Cir.1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989)). This rule applies where the federal claims are disposed of on summary judgment. *See Morris v. Dillard Dept. Stores, Inc.,* 277 F.3d 743, 756 (5th Cir.2001). The dismissal of the pendent state law claims is expressly without prejudice, so that plaintiffs may refile their claims in the appropriate state court. *Bass v. Parkwood Hosp.,* 180 F.3d 234, 246 (5th Cir.1999).

Because the Court has entered summary judgment for Defendant on each of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction on Plaintiff's remaining state law claim of intentional infliction of emotional distress. The Court dismisses this claim without

prejudice to Plaintiff's refiling the claim in state court.

## III. CONCLUSION

For the reasons discussed above, Defendant Elcom, Inc.'s Motion for Summary Judgment (Doc. No. 21) is **GRANTED** as to all of Plaintiff's federal claims. Plaintiff's intentional infliction of emotional distress claim is dismissed without prejudice to Plaintiff's refiling the claim in state court.

The clerk shall close the case.

**SO ORDERED.**