United States Court of Appeals
Fifth Circuit

**F I L E D**

June 13, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 01-41222

———————

RONALD H. MANNING,

Plaintiff-Appellant,

versus

CHEVRON CHEMICAL COMPANY LLC,

Defendant-Appellee.

Appeal from the United States District Court
For the Eastern District of Texas

Before HIGGINBOTHAM, EMILIO M. GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Ronald H. Manning ("Manning") appeals the district court's grant of summary judgment in favor of Chevron Chemical Company, LLC ("Chevron"). Manning filed this employment discrimination lawsuit against Chevron, claiming that the company discriminated against him on the basis of his race, gender, and disability, and retaliated against him for seeking redress for these alleged wrongs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). We conclude

that the district court properly granted Chevron's motion for summary judgment, and therefore affirm.

I

For approximately 23 years, Manning, an African American male, worked at a Chevron facility in Orange, Texas. In 1998, Manning applied for a promotion to the position of Technician 1 ("T-1"). Chevron decided not to promote Manning, and instead selected Peggy Williams (an African American female) and Fred Noyes (a Caucasian male) for the two open positions.

On October 26, 1998, after learning that he was not selected for a T-1 position, Manning filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and gender discrimination as well as retaliation.[1] Manning did not check the box labeled "disability" (for an allegation of disability discrimination) on that original charge.

Manning subsequently consulted an attorney about his case. The attorney noticed that Manning had a tendency to stutter as he spoke, and suggested that Manning might also have a disability discrimination claim. At his counsel's suggestion, on November 20, 1999, Manning amended his charge of discrimination to include an ADA claim. He then filed the instant lawsuit, raising race, gender, disability, and retaliation claims for Chevron's failure to promote him to a T-1 position.

A few months later, Chevron began reorganizing its workforce[2] and informed Manning that he was among the employees who might be terminated during this process. Chevron offered Manning

---

[1] Manning explained the basis for the retaliation claim when he filed his federal complaint: Manning had previously brought employment discrimination actions against Chevron, and he believed that the company failed to promote him to retaliate against him for having filed those prior lawsuits.

[2] The reorganization was precipitated by a merger of Chevron and Phillips Petroleum.

(along with many of the other employees facing layoff) the opportunity to apply for positions at other Chevron facilities. Manning subsequently applied for transfers to the Cedar Bayou Chemical Plant and the Kingwood technology facility. Manning did not obtain a position at either location. As a result, he amended his federal complaint against Chevron to include disability discrimination and retaliation claims for the company's failure to transfer him.

Chevron offered most of the employees facing layoff a severance package valued at approximately $45,000.00. Chevron informed Manning that, in order to receive the package, he would have to sign a release form, waiving all claims against the company. Manning refused to sign the release and did not receive any severance pay. Manning alleged in his federal lawsuit that Chevron's failure to provide him with the severance package was another instance of retaliation.

The district court found that Manning had failed to raise a genuine issue of material fact as to any of his race, gender, or retaliation claims. The court also concluded that Manning's disability discrimination claim regarding the T-1 position was time-barred, because Manning had failed to file a timely charge of disability discrimination with the EEOC. Therefore, the district court granted Chevron's motion for summary judgment.

On appeal, Manning contends that (1) his ADA claim regarding the T-1 position is not time-barred; (2) even if that first ADA claim is time-barred, his additional disability discrimination claim (regarding the Cedar Bayou transfer positions) is subject to equitable tolling; (3) Chevron engaged in race and gender discrimination when it failed to promote Manning to the T-1 position; and (4) Chevron's failure to transfer him and its refusal to award him the severance package constituted retaliation. We address each claim in turn.

II

We review the district court's ruling on a motion for summary judgment *de novo*, applying the same legal standard as the district court. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002). Summary judgment should be granted only when there is "no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c); *Wyatt*, 297 F.3d at 408-09. An issue of fact is material only "if its resolution could affect the outcome of the action." *Wyatt*, 297 F.3d at 409.

In determining whether there is a dispute as to any material fact, we consider all of the evidence in the record, but we do not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, we "draw all reasonable inferences in favor of the nonmoving party[.]" *Id.*; *Wyatt*, 297 F.3d at 409. If we determine, after giving credence to the facts as presented by the nonmoving party, that "the moving party is entitled to a judgment as a matter of law," we affirm the grant of summary judgment. FED. R. CIV. P. 56(c).

The district court found that Manning's disability discrimination claim regarding the T-1 position was untimely. As the district court recognized, under the ADA, Manning had to file a charge of discrimination within 300 days of the alleged discriminatory act. *See* 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(e)). The limitations period began to run from the time Manning "[knew] or reasonably should have known that the challenged act [had] occurred." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000).

Manning learned that he did not receive the T-1 position on June 16, 1998. He had 300 days from that date (or until April 12, 1999) to file his charge of discrimination. Manning did file a timely charge on October 26, 1998, but that charge alleged only race, gender, and retaliation claims. Manning did not amend his charge to include an ADA claim until November 20, 1999, after the

-4-

expiration of the 300-day period. As a result, the district court concluded that his disability discrimination claim was untimely.

Manning argues that the district court erred in holding that his ADA claim was time-barred. He contends that the court should have found that his amended charge, alleging disability discrimination, "relates back" to the date of his (timely filed) original charge.

As Manning appears to recognize, EEOC regulations allow a claimant to amend a charge of discrimination to "cure technical defects or omissions" or to "clarify and amplify" the initial allegations. 29 C.F.R. § 1601.12(b). If the amendments involve acts that "relate[] to or grow[] out of the subject matter of the original charge," the amendments will "relate back to the date the charge was first received." *Id.*; *see* 29 C.F.R. § 1626.8(c). Manning contends that his amendment, which added a disability discrimination claim, is sufficiently related to the subject matter of his original charge (*i.e.*, his race, gender, and retaliation claims) to "relate back" to the date of his original charge. As a result, he claims, his disability discrimination claim should be deemed timely.

Generally, amendments that raise a new legal theory do not "relate back" to an original charge of discrimination. *See, e.g.*, *EEOC v. Miss. Coll.*, 626 F.2d 477, 483-84 (5th Cir. 1980) (observing that "[b]ecause [the claimant's] allegations of racial discrimination do not relate to or grow out of the allegations of sex discrimination advanced in the original charge, that aspect of the amended charge does not relate back to the time of filing of [the] original charge"); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir. 1999) (holding that the plaintiff's amended charge did not relate back under § 1601.12(b), because the original charge alleged only race discrimination, while the amended charge included "a new theory of recovery"—retaliation); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 575 (7th Cir. 1998) ("[A]n untimely amendment

-5-

that alleges an entirely new theory of recovery does not relate back to a timely filed original charge."); *id.* at 576 (concluding that an amendment containing a claim of disability discrimination did not relate back to the original charge, which alleged age discrimination); *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir. 1996) (holding that the plaintiff's age discrimination claim did not relate back to the originally filed charge of sex discrimination).

This rule has an important policy justification. One of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984). In order to adequately notify employers about the nature of the charges against them, employees must inform their employers from the outset about their claims of discrimination. *See Simms*, 165 F.3d at 1327 ("Prohibiting late amendments that include entirely new theories of recovery furthers the goals of the statutory filing period—giving the employer notice and providing opportunity for administrative investigation and conciliation."); *Fairchild*, 147 F.3d at 575 ("The charge filing requirement ensures that the employer has adequate notice of the charges and promotes conciliation at the administrative level.").

Despite the important policy justifications for requiring employees to assert all of their claims in the original charge, we have identified one very narrow exception to this general rule. We have held that an amendment, even one that alleges a new theory of recovery, can relate back to the date of the original charge when the facts supporting both the amendment and the original charge are essentially the same. *See Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985) (concluding that the plaintiff's amendment, which alleged gender discrimination, related back to the age and retaliation claims in her original charge, because the factual allegations in the original charge included a reference to gender discrimination); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462-64 (5th

Cir. 1970) (concluding that the plaintiff could add a national origin discrimination claim to the gender discrimination claim in her original charge).

Manning contends that his case fits under our exception. He asserts that, when he amended his original charge to include a disability discrimination claim, he "did not allege new and/or additional facts to support his amended disability claim." Manning appears to assume that, under our cases, an employee can amend his charge of discrimination at any point to allege a new theory of recovery, as long as the employee does not allege any new facts in the amended charge.

Manning misunderstands the import of our precedent. The issue is not whether the employee *adds* any facts when he amends his charge of discrimination. Instead, the question is whether the employee *already included* sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination. *See Hornsby*, 777 F.2d at 247 (concluding that the plaintiff could add a claim of gender discrimination because the facts in her original charge supported such a claim, but holding that the plaintiff could *not* amend her complaint to include a claim of sexual harassment, because the facts alleged in the original charge did not support such a claim); *see also Sanchez*, 431 F.2d at 462 ("[T]he crucial element of a charge of discrimination is the factual statement contained therein."). In this case, Manning failed to allege sufficient facts in his original charge to provide Chevron with the requisite notice. Therefore, we hold that Manning's amended charge, alleging disability discrimination, does not relate back to his original charge, which raised different theories of recovery.

As Manning acknowledges, our conclusion that Manning's ADA claim regarding the T-1 position was untimely "adversely affect[s]" his additional disability discrimination claim. Manning was informed on July 19, 2000, that he would not be transferred to any position at the Cedar Bayou

facility. He then had 300 days (or until May 15, 2001) to file a charge of discrimination. Manning, however, never filed any charge of discrimination with respect to these transfer positions. Manning believed that a new charge of discrimination was unnecessary, because (in his view) his ADA claims were already properly before the district court. However, as we have concluded, Manning did not file a timely charge of disability discrimination with respect to the T-1 position. Therefore, in order to bring a disability discrimination claim with respect to the transfer positions, he should have filed a new charge of discrimination. Because he failed to do so, his additional ADA claim is also time-barred.

Manning concedes that his disability discrimination claim regarding the Cedar Bayou facility was untimely. He argues, however, that we should apply the doctrine of equitable tolling to this claim.

As Manning asserts, the limitations period on filing a charge of employment discrimination "is subject to equitable doctrines such as tolling or estoppel." *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). However, these equitable doctrines "are to be applied sparingly." *Morgan*, 536 U.S. at 113. The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case. *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002).

We have identified three potential bases for equitable tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988). Manning asserts that all three bases for equitable tolling apply in his case.

Manning first argues that equitable tolling should apply because his case has been pending in the wrong forum. Manning appears to assert that, because he brought his claim in an untimely manner, the district court was the "wrong" forum for those claims. Evidently, Manning misunderstands the meaning of the first factor justifying equitable tolling. As we observed in *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295 (5th Cir. 1979), equitable tolling is appropriate in the rare case when the parties have been litigating an action in state court, but they later discover that they chose the wrong forum under state law. *Id.* at 1302. This first basis for equitable tolling does not apply in Manning's case.

Manning next asserts that equitable tolling is appropriate because Chevron concealed the facts supporting his ADA claim. Manning suggests that he was unaware that his alleged disability (his stuttering) might have affected Chevron's decision with respect to the Cedar Bayou positions until the company released the notes from Manning's interview for the positions. These notes contained negative comments about Manning's speech and communication skills. Manning claims that, until these notes were released in November or December of 2000, he had no way of knowing that he might have been discriminated against based on his disability. Thus, Manning suggests, Chevron misled him about a potential ADA claim.

Manning's argument lacks merit. We equitably toll a limitations period only when the employer's *affirmative acts* mislead the employee and induce him not to act within the limitations period. *Ramirez*, 312 F.3d at 184; *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002). In this case, Manning has not alleged that Chevron took any action that might have induced him not to file a charge of discrimination. By his own admission, Manning failed to file a new charge with the EEOC solely because he believed his disability discrimination claims were already properly before the

district court.

That leads us to Manning's assertion that the third basis for equitable tolling applies in his case: the EEOC misled him about the nature of his rights. Manning contends that, by issuing him a new right to sue letter (containing an ADA claim relating to the T-1 position), the EEOC led Manning to believe that he could properly bring his ADA claims. Once again, Manning misunderstands our stated basis for equitable tolling. We apply equitable tolling when an employee seeks information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge. *See Ramirez*, 312 F.3d at 184. In this case, Manning does not allege that the EEOC gave him any incorrect information with respect to the proper time for filing his charge. Therefore, the third basis for equitable tolling does not apply in this case. Manning's disability discrimination claims are time-barred.[3]

III

Manning alleges that Chevron discriminated against him on the basis of race and gender when it failed to promote him to a T-1 position. As we have observed, Chevron instead selected Peggy Williams (an African American female) and Fred Noyes (a Caucasian male). Manning contends that Chevron discriminated against him as an African American male.

Manning attempts to prove his race /gender discrimination claim by indirect (circumstantial) evidence. As a result, we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this three-part scheme, a plaintiff must first present a prima facie

---

[3] Manning suggests that his claims might be timely under a continuing violation theory. Manning fails, however, to adequately brief this issue, so we need not address it. *See Kane Enter. v. MacGregor (USA) Inc.*, 322 F.3d 371, 376 n.3 (5th Cir. 2003) (observing that issues inadequately briefed are deemed waived).

case of discrimination. A plaintiff satisfies this initial burden by showing that (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If the plaintiff can present a prima facie case, the burden shifts to the defendant to rebut the plaintiff's case by demonstrating a "legitimate, nondiscriminatory justification for its actions." *Id.* If the defendant offers such a justification, the burden shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination. *Id.*

Both parties appear to agree that Manning has demonstrated a prima facie case of discrimination. Therefore, we proceed to the second two parts of the analysis.

Manning argues that Chevron has failed to articulate a legitimate, non-discriminatory reason for its decision not to promote him. As Manning observes, Chevron claimed that it selected the "best qualified" candidates for the T-1 position. Manning appears to argue that this declaration was not sufficient. He claims that Chevron had to state the "specific reason [he] was denied [the] promotion." Manning appears to argue that Chevron was required to explicitly state that it chose Williams and Noyes because they were more qualified than Manning, rather than simply state that they were the "best qualified" candidates. We disagree. Chevron's statement that it chose the "best qualified" candidates clearly implies that it selected Williams and Noyes because they were better qualified than Manning. Chevron's explanation constitutes a legitimate, non-discriminatory justification for its failure to promote Manning. *See id.* at 721 n.2.

Because Chevron provided a legitimate, non-discriminatory justification, the burden shifted back to Manning to show that Chevron's asserted reason was a pretext for discrimination. In order

to demonstrate that Chevron's asserted justification (that Williams and Noyes were more qualified) was pretext, Manning can attempt to show that he was "clearly better qualified" for the T-1 position. *Id.* at 723; *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999).[4] Manning attempts to show that he was better qualified than Williams and Noyes by pointing to his educational background, his various technical and analytical skills, and his asserted good performance during the interview process. The facts presented by Manning fail, however, to suggest that he was *clearly better qualified* than the selected applicants.[5] Thus, Manning cannot demonstrate pretext in this manner.

Second, Manning contends that Chevron's assertion (that Williams and Noyes were the most qualified candidates) must be pretext because Chevron's hiring criteria were largely subjective. The mere fact that an employer uses subjective criteria is not, however, sufficient evidence of pretext. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) (observing that "'[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII'") (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001)).

Third, Manning attempts to show pretext by pointing to Chevron's alleged failure to promote

---

[4] Manning suggests that we should not apply our "clearly more qualified" standard, because, he asserts, it is inconsistent with the Supreme Court's decision in *Reeves v. Sanderson Plumbing Prods.*, *Inc*., 530 U.S. 133 (2000). Manning fails to explain (and we fail to see) how the Court's decision in *Reeves* undermines our cases articulating the "clearly more qualified" standard. In any event, *Price v. Federal Express Corp.*, 283 F.3d 715 (5th Cir. 2002), a post-*Reeves* decision, makes clear that the standard still applies. *See id.* at 723.

[5] Indeed, it is not even apparent that Manning himself believes he was clearly better qualified than both Williams and Noyes. When questioned about Williams' qualifications, Manning stated that she was a "tremendous technician," suggesting that he believed Williams to be at least equally qualified for the T-1 position.

African American males to managerial or supervisory positions. The evidence he provides, however, does not demonstrate pretext. *See Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1071 (5th Cir. Unit A Jun. 1981) ("The statistical evidence buttresses [the plaintiff's] prima facie case, but it does not demonstrate that the reason advanced for failure to promote him lacked either substance or credibility.").

Finally, Manning relies on a discriminatory statement allegedly made by Wanda Weatherford ("Weatherford"), a Chevron employee who participated in the decisionmaking process for the T-1 positions. Manning asserts that Weatherford once used the word "nigger" in his presence. We have held that, in order for comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of which the plaintiff is a member; (2) proximate in time to the employment action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001). Manning cannot meet the second and fourth requirements of that test. Manning claims that Weatherford made the derogatory comment prior to 1994, at least four years before he applied for the T-1 position. Manning fails to allege either that the comment was made at (or around) the time of the promotion decision or that the comment related in any way to that employment decision. As a result, Manning fails to demonstrate pretext in this manner.

None of the other evidence presented by Manning creates a genuine issue of material fact regarding pretext. We thus conclude that the district court did not err in granting summary judgment to Chevron on this claim of race and gender discrimination.

IV

Manning contends that Chevron retaliated against him when it failed to transfer him to the

Cedar Bayou and Kingwood facilities and when it refused to award him a $45,000 severance package. Title VII prohibits an employer from retaliating against an employee because that employee has complained about acts of discrimination at work. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

We have stated that, in order to establish a prima facie case of retaliation, the plaintiff must show (1) that he engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there is a causal link between the protected activity and the adverse employment action. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001).

Chevron argues that Manning cannot establish a prima facie case for the transfer positions because he cannot satisfy the third requirement: demonstrating a "causal link" between his protected activity and the adverse employment action. Chevron asserts that the supervisors who made the decisions regarding the lateral transfer positions were unaware that Manning had previously filed employment discrimination actions against the company. Chevron contends that, because these individuals were unaware of Manning's lawsuits, they could not have retaliated against Manning for filing the lawsuits.

We have determined that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001); *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an

employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").[6]

To show that the decisionmakers at the Cedar Bayou and Kingwood facilities were aware of his lawsuits, Manning offers only an ambiguous statement by John Swansiger ("Swansiger"), who apparently was a supervisor at the Chevron facility where Manning worked. Swansiger was the individual who informed Manning that he was not selected for any of the lateral transfer positions. During this conversation, after Swansiger told Manning that he had not received a Cedar Bayou position, Manning asked about the Kingwood facility. According to Manning, Swansiger replied, "No, they don't want that." According to Manning, although he asked Swansiger about the statement, Swansiger never explained the meaning of the comment. Manning ultimately concluded that Swansiger was referring to Manning's employment discrimination actions.

We conclude, however, that Swansiger's statement does not indicate that any of the decisionmakers at the Cedar Bayou or Kingwood facilities knew about Manning's previous lawsuits against Chevron. As a result, Manning fails to demonstrate a causal link between his protected activity and Chevron's failure to transfer him. Thus, Manning cannot establish a prima facie case of retaliation for the lateral transfer positions.

Finally, Manning claims that Chevron retaliated against him by failing to award him a $45,000

---

[6] Manning appears to contend that, in order to establish a prima facie case, he need not offer evidence that the Cedar Bayou or Kingwood decisionmakers were aware of any of his prior lawsuits. As Manning observes, "[a]t this threshold stage, the standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard." *Fierros*, 274 F.3d at 191. Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity. *See Medina*, 238 F.3d at 684. If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity.

severance package. This package was offered to the Chevron employees who lost their jobs during the company reorganization of 2000. In order to receive the package, Manning had to sign a release form, waiving all claims against the company. Manning was unwilling to do so, because Chevron informed him that signing the release would require him to abandon the lawsuit he had already filed. Manning contends that Chevron's failure to award him the severance package constituted retaliation.

Again, Manning must show that there was a causal connection between Chevron's refusal to award him the severance package and his protected activity. Manning, however, fails to demonstrate that causal link. The record shows that Chevron required *all* employees to sign the same release form before they could receive the severance package. Thus, when Chevron refused to award Manning a severance package, it was simply applying that general policy to Manning, not retaliating against him for bringing an action against the company. *See Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1508 (3rd Cir. 1996) (concluding that the plaintiff failed to prove the causal link required for a retaliation claim, because the defendant employer "required completion of a form waiving all claims against [the employer] from *all* employees prior to disbursing the [benefits]") (emphasis added).

Manning has not demonstrated that the district court erred in granting Chevron's motion for summary judgment. As a result, the judgment of the district court is AFFIRMED.

DENNIS, Circuit Judge, specially concurring:

While I agree with much of the majority opinion, I write separately to express disagreement with the majority's statement in a footnote that Price v. Federal Express Corp., 283 F.3d 715 (5th Cir. 2002), established that Deines v. Texas Department of Protective & Regulatory Services, 164 F.3d 277 (5th Cir. 1999), survived the Supreme Court's decision in Reeves v. Sanderson Plumbing Products, 530 U.S. 133 (2000). I believe that this remains an open question that we must resolve in a future, appropriate case.

In Reeves the Supreme Court rejected prior Fifth Circuit jurisprudence holding that a plaintiff needed evidence beyond evidence showing that an employer's proffered non-discriminatory reason for an employment decision is false in order to establish a Title VII claim. Rather, a plaintiff's prima facie case combined with evidence that the employer's stated reasons are false can be sufficient grounds to support a verdict for a plaintiff. Reeves, 530 U.S. at 148.

Whether the "clearly better qualified" standard articulated in Deines is consistent with Reeves is unclear. While Deines could be read, in accordance with Reeves, to merely state the standard of proof required to establish that the employer's stated reasons are false, the opinion specifically denied that the test it applied did

-17-

so.  See Deines, 164 F.3d at 281.  The opinion's stated purpose of describing the "quality" of evidence needed to establish the "ultimate fact" of intentional discrimination, id., sounds suspiciously similar to the requirement of additional evidence of intentional discrimination beyond proof of falsity that the Supreme Court found inconsistent with Title VII in Reeves.  And contrary to the majority's suggestion, our continued application of Deines in Price without analysis of whether Deines survived Reeves does not establish that Deines is still good law.  Rather, it merely shows that litigants in Price failed to properly raise the issue of Deines' vitality.

Thus, I believe that this court must one day confront whether Deines is still good law.  This, however, is not that day, as Manning has introduced no relevant evidence suggesting that his employer's proffered explanation is false.  Most of Manning's rebuttal evidence consists of conclusory assertions insufficient to withstand summary judgment.  Ramsay v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The remaining evidence consists of Manning's different educational background and additional years of experience in his current position, both of which Chevron has established were not criterion for the T-1 position.  In fact, as the majority accurately explains, Manning has all but admitted that at least one of the people who received the job instead of him was as well qualified for the position as he was.  Hence, I believe that we

should affirm the district court's grant of summary judgment here without reaching the thorny question of whether the <u>Deines</u>' "clearly better qualified" standard remains good law.