# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 22, 2010

Lyle W. Cayce
Clerk

No. 08-31048

BRIAN LINDBERG,

Plaintiff–Appellant,

v.

BOSSIER PARISH AMBULANCE SERVICE DISTRICT, also known as Bossier Parish Emergency Medical Service; DUXIE SCOTT, Individually and In His Official Capacity as Director of the Bossier Parish Emergency Medical Service; CHERYL MCENTYRE, Individually and In Her Official Capacity as Assistant Director of the Bossier Parish Emergency Medical Service,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 05:07-CV-641

Before GARWOOD, OWEN and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Brian Lindberg appeals the district court's grant of summary judgment in favor of Bossier Parish Emergency Medical Service (BPEMS), Duxie Scott, and Cheryl McEntyre dismissing Lindberg's claims for wrongful termination. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-31048

**I**

Bossier Parish Emergency Medical Services (BPEMS) was formed to provide general medical services to citizens of Bossier Parish. BPEMS provides advanced life-support services, which can be provided only by paramedics. BPEMS therefore hires only individuals who are already certified paramedics or who indicate a desire to complete their paramedic certification while employed at BPEMS.

In February 2005, BPEMS hired Lindberg as an Emergency Medical Technician–Intermediate. During his interview, Lindberg told Director Duxie Scott and Human Resources manager Fred McAnn that he was interested in taking paramedic classes and that it was his desire to become certified as a paramedic.

Some time during the hiring process or shortly after he was hired, Lindberg learned that BPEMS received funding from Bossier Parish Community College (BPCC) for employees to attend a paramedic program. Amanda Waller, who was also hired in early 2005, Tommy Gilmer, an existing employee, and other employees began taking prerequisite courses for the program in the spring of 2005. Lindberg took prerequisites courses during the summer session in 2005. All the students, including Lindberg, attended class and worked their regularly scheduled shifts when not in class. For Lindberg and the other new employees, the paramedic program was scheduled to begin in the fall of 2005, for those taking night classes, and in the spring of 2006, for those taking day classes. Lindberg opted to participate in the day classes after Assistant Director Cheryl McEntyre told him that, if he chose the day classes, he would not be required to work his scheduled shifts on days that he was also scheduled to attend class.

No. 08-31048

During early 2005, employees in BPEMS, including Lindberg, began to organize a local labor association, consisting of employees in BPEMS. BPEMS employee Larry Hadley told Scott about these efforts, and Scott responded by telling Hadley that he did not like the fact that employees were attempting to organize "behind closed doors" and that they had not asked his opinion of their organizing efforts. Scott said that he felt "dumped on" by the employees' decision to organize the union "behind his back."

In August 2005, at a meeting of the BPEMS Board of Commissioners, Hadley told the Board that employees intended to form a labor organization. Immediately afterwards, Scott approached John A. James, Stacy Birdwell, and Jamie Touchet, who were representatives of the Louisiana Professional Fire Fighters Association. Scott told them that he could prevent the formation of the union by firing BPEMS probationary employees. Scott was aware that if either of the two probationary employees was terminated, the association would not have enough votes to form. Neither of these employees, one of whom was Lindberg, was terminated, and a union was formed.

Lindberg became an active union member and was selected to become a union steward. He did not, however, tell Scott that he was a member of the union, and there is no evidence that Scott learned of Lindberg's union membership.

At some point after Lindberg's hiring, McEntyre informed him that "plans had changed" and that Lindberg would now be required to attend classes and work his regularly scheduled shifts on the same days. As a result of these changes, Lindberg refused to attend the paramedic program. At a meeting of the BPEMS Board of Commissioners on March 15, 2006, he stated his reasons for

3

No. 08-31048

not participating:

> I refused to go by those guidelines. . . . What they were telling me was that I was going to go to class Monday through Friday 8:00 to 3:00, then I was going to have to work on a truck whenever they tell me to at night and weekends and also cover for another girl's shift.

On April 13, 2006, Lindberg's employment was terminated. The termination letter stated: "You are being terminated due to your failure to meet the requirements to enter the current program and your statements you have no interest in obtaining your paramedic certification."

Lindberg filed suit in the Western District of Louisiana for unlawful termination against BPEMS, Scott, and McEntyre, pursuant to 42 U.S.C. § 1983. Lindberg argued that the termination violated his constitutional right of freedom of association and that it was in violation of Louisiana Revised Statute § 23:833. He also alleged that he was denied due process because he was terminated without notice, an opportunity to defend himself, or a post-termination review. The district court granted the defendants' motion for summary judgment on all claims. Lindberg timely appealed regarding the freedom of association and due process claims.

## II

We review the district court's grant of summary judgment de novo.[1] Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[2] Under this standard, the court must draw all permissible inferences from the

---

[1] *Settlement Funding, LLC v. TransAmerica Occidental Life Ins. Co.*, 555 F.3d 422, 424 (5th Cir. 2009).

[2] FED. R. CIV. P. 56(c)(2).

No. 08-31048

underlying facts in the light most favorable to the party opposing the motion.[3]

### III

Lindberg alleges that the defendants violated his right to free association under the First Amendment by terminating him because of his involvement in the local labor association. Although there is no right to government employment, the denial or deprivation of government employment may not be based on one's exercise of First or Fourteenth Amendment rights.[4] It is well-established that the First Amendment right to free association includes the right to join unions.[5]

This court uses a three-part analysis when addressing the claims of local government workers who assert that they have been retaliated against for exercising their right of free association. To prevail on a § 1983 retaliation claim based on freedom of association, an employee must establish that (1) he suffered an adverse employment action; (2) his interest in associating outweighs the employer's interest in promoting efficiency; and (3) his protected activity was a substantial or motivating factor in the adverse employment action.[6]

Lindberg's termination clearly constitutes an adverse action, and we will assume for the purpose of argument that Lindberg's interest in associating with the union outweighed BPEMS's interest in providing efficient operations. The question, then, is whether Lindberg's associational activity was a substantial or motivating factor in the adverse action taken against him. In order to establish

---

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

[4] *Rutan v. Republican Party*, 497 U.S. 62, 72 (1990).

[5] *Prof'l Ass'n of Coll. Educators v. El Paso Cnty.*, 730 F.2d 258, 262 (5th Cir. 1984).

[6] *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

No. 08-31048

this prong, Lindberg must at least demonstrate that Scott knew about Lindberg's activity.[7]

Lindberg has presented no evidence in this regard. Scott stated that he did not know of Lindberg's activities. Lindberg admits that he never told Scott of his membership in the association. There is no evidence that the few BPEMS supervisors who knew of Lindberg's membership relayed this information to Scott. When an employer does not know of an employee's associational activity, such activity cannot be a substantial or motivating factor in an adverse employment action.[8]

Lindberg points to Scott's comments after the August 2005 board meeting as evidence that Scott knew that Lindberg supported the union. At that meeting, Scott claimed that he could prevent the union's formation by firing the two probationary employees, one of whom was Lindberg. Without these votes, Scott knew that the employee vote would be 10 to 9 against formation. This comment, however, provides no evidence that Scott knew that Lindberg would vote in favor of union formation. It demonstrates only that Scott knew that it would be impossible for the union supporters to obtain a majority vote if the two provisional employees did not vote. Scott's comments after the August meeting provide no evidence that he knew Lindberg favored the union.

Nor is there evidence in the record that suggests that McEntyre knew of Lindberg's union membership or that she had any anti-union animus. Lindberg points only to the fact that McEntyre drafted his termination letter. This provides insufficient evidence that Lindberg's union membership was a

---

[7] *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2005).

[8] *Id.*

No. 08-31048

substantial or motivating factor in the decision to fire him.

Lindberg argues that his termination violated his due process rights. The requirements of due process "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."[9]   Whether an employee has a property interest in his job is determined by state law.[10]   Under Louisiana law, there are two ways in which employees can have a property interest in their job: (1) if the employer contracted with the employees to fire them only for cause or (2) if the employees are permanent classified employees under the Louisiana civil service system.[11]

There is no evidence that BPEMS contracted with Lindberg to fire him only for cause, nor was Lindberg a permanent classified employee under the Louisiana civil service system.   Therefore, Lindberg did not have a protected property interest in continued employment at BPEMS.

Lindberg claims that his termination violated his protected liberty interest.   To determine whether a public employee has been deprived of a protected liberty interest, a court must ask whether he was "terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to his standing or reputation in his community or terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result."[12]   "False" in this context does not mean that the stated

---

[9] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).

[10] *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996).

[11] *Id.*

[12] *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 347 (5th Cir. 2006) (quoting *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir. 1997)).

7

No. 08-31048

reason for termination was pretextual.  Rather, it means that the stated reason was factually incorrect.[13]

Lindberg's termination letter stated that he was being terminated "due to [his] failure to meet the requirements to enter the current program and [his] statements [that he had] no interest in obtaining [his] paramedic certification." Lindberg argues that this reason was false because he never refused to obtain his paramedic certification.  Rather, according to Lindberg, he had merely requested that BPEMS allow him to attend the paramedic program without having to attend his regularly scheduled shifts on class days.

The record, however, clearly establishes that Lindberg expressly refused to attend the paramedic program as long as he was required to comply with BPEMS's work policy.  Because Lindberg refused to attend paramedic training in accordance with BPEMS requirements, he was not terminated for a reason that was "false."  Thus, his termination did not violate due process.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[13] *See Cabrol*, 106 F.3d at 107 (determining that the plaintiff had not shown that the stated reason for his termination was false when he did not controvert the factual bases for his dismissal).