

NUMBER 13-22-00351-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

THE UNIVERSITY OF TEXAS
RIO GRANDE VALLEY,                                                        Appellant,

v.

PAUL C. KAVANAUGH,                                                         Appellee.

On appeal from the 138th District Court
of Cameron County, Texas.

MEMORANDUM OPINION

Before Justices Benavides, Tijerina, and Peña
Memorandum Opinion by Justice Benavides

In this interlocutory appeal from the denial of a plea to the jurisdiction, appellant University of Texas Rio Grande Valley ("UTRGV") contends that appellee Paul Kavanaugh failed to present sufficient evidence of pretext to support his claim of age

discrimination. We affirm.

## I.  BACKGROUND

In March 2019, pursuant to UTRGV's Reduction in Force (RIF) policy, Kavanaugh was laid off from his position as a grant proposal writer in the Vackar College of Business and Entrepreneurship. Under the RIF policy, affected employees who apply for a vacancy at UTRGV within six months of their termination are given priority consideration over equally qualified candidates.

Grant programs are generally divided into two categories: publicly funded programs and privately funded programs. UTRGV's Office for Corporate and Foundation Relations (CFR) works with private funders to accomplish the university's strategic goals. In September 2019, CFR posted an opening for a "grant proposal writer.[1]" The posting described the scope of the position as being "[r]esponsible for the development, writing, and editing of assigned proposals and reports." The posting further stated that the position "[p]rovides and coordinates assistance in identifying and developing funding sources to support existing and planned program activities." The posting goes on to describe eleven specific duties for the position. The scope and duties described in the posting were identical to UTRGV's description of Kavanaugh's previous position as a "grant proposal writer" for the business school. The only preferred qualification stated in the posting was "[e]xperience in [a] higher education setting."

A search committee was formed consisting of CFR's three employees at that time: Felipe Salinas, Director of Development for Corporate and Foundation Relations, Madahy

---

[1] The quoted language has been modified from all capital letters.

Romero, who also held the title Director of Development for Corporate and Foundation Relations, and Alma Rock, Grant Development Manager. The role of the committee was to review applications, select candidates to interview, conduct interviews, and then make a hiring recommendation to UTRGV administration.

Kavanaugh, sixty-four years old at the time, applied for the position, along with five other candidates. As part of the application process, each candidate was required to submit samples of their previous grant proposals. According to his application, Kavanaugh had a doctoral degree and twelve years of experience as a grant proposal writer. In addition to writing grant proposals for publicly funded programs, Kavanaugh also had recent experience seeking private funders. Prior to his position with UTRGV's business school, Kavanaugh was a senior associate research strategist at UTRGV from September 2015 until October 2017. In this position, he "worked with faculty and staff to develop grant applications to private foundations and tax supported entities." After his position at the business school, Kavanaugh took a position with the Catholic Charities of the Archdiocese of San Antonio as a "Grants Director." In this position, Kavanaugh wrote grant proposals "to private foundations and tax-supported entities" while supervising two other grant writers.

Eslibeth Perez, twenty-six years old at the time, was one of the other applicants. According to her application, Perez had a master's degree and three years of experience as a grant proposal writer while working as the "Program Coordinator" for the United Way of South Texas's Volunteer Income Tax Assistance Program. Both candidates were selected for interviews.

The committee asked each candidate the same set of questions and took notes on their responses. Each candidate was asked to discuss their experience as a grant writer. The committee noted that Kavanaugh's experience as a grant writer was primarily in higher education, including writing grants "for every college & division" at UTRGV. Perez had never worked as a grant writer in higher education. Each candidate was also asked about the largest grant they had secured. Perez responded that she had secured a grant for $60,000 a year over a two-year period. Kavanaugh responded that he had secured a Title V grant for $2.5 million and another grant for more than $1 million. According to his resume, over the course of Kavanaugh's career, he also collaborated with faculty in securing grant awards of $688,000, $500,000, and $299,000. In response to a question about their experience drafting budgets for programs or grant proposals, Kavanaugh stated that he had developed 200–300 budgets in his twelve years of experience. Perez did not specify how many budgets she had developed but discussed her process for creating budgets and her familiarity with QuickBooks.

The committee recommended Perez for the position. In an email to the HR department, Salinas explained that the committee had recommended Perez over Kavanaugh because she "appeared to be a stronger fit for what the office requires." According to Salinas, the position required a "technician" who can manage a program, and Perez's experience as a project manager at United Way demonstrated to the committee that "she would work well in a fast-paced environment." UTRGV ultimately accepted the committee's recommendation and hired Perez for the position.

4

After receiving his right-to-sue letter from the Texas Workforce Commission, Kavanaugh filed suit against UTRGV alleging age discrimination. [2] According to Kavanaugh, UTRGV hired the substantially younger and less-experienced Perez to save money in salary and benefits, such as medical insurance. The job posting provided for an unspecified salary "commensurate with experience," and up to that point, Kavanaugh was commanding an annual salary that doubled Perez's salary with United Way. Kavanaugh also alleged that the decision to hire Perez was part of UTRGV's pattern and practice of forcing older, higher-salaried faculty and staff to retire in favor of hiring younger, less-experienced faculty and staff with lower salaries and less expensive benefit packages.

After both parties conducted discovery, UTRGV filed a plea to the jurisdiction. UTRGV acknowledged that Kavanaugh had established a prima facie case of age discrimination but argued that the record supported its decision to hire Perez because she was the better qualified candidate. Kavanaugh responded that the record supported his contrary assertion that he was clearly better qualified for the position than Perez. Additionally, he argued that evidence of UTRGV's pattern and practice of age discrimination supported his position that UTRGV's explanation was pretextual.

After conducting a hearing, the trial court found that a fact issue existed as to pretext and denied UTRGV's plea. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

---

[2] While Kavanaugh was pursuing his discrimination claim with the Texas Workforce Commission, UTRGV hired him for the position of grant research officer for the UTRGV School of Medicine. Kavanaugh voluntarily left this position upon his retirement in December 2021.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

A common-law doctrine, sovereign immunity protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008) ("*Garcia I*"). Generally, governmental entities in Texas, such as UTRGV, are immune from lawsuits unless the Legislature has expressly waived their immunity by statute. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *see Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021) (observing that state universities are governmental entities entitled to immunity).

"A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction." *Town of Shady Shore v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012)). Thus, when a plaintiff sues a governmental entity, they must allege facts that fall within a legislative waiver of immunity. *Id.* (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). A governmental defendant may challenge the trial court's jurisdiction by attacking the plaintiff's pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

6

When a defendant challenges the existence of jurisdictional facts, as UTRGV has done here, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012) ("*Garcia II*")). As such, we take as true all evidence favorable to Kavanaugh, indulging every reasonable inference and resolving any doubts in his favor. *See id.* (citing *Alamo Heights*, 544 S.W.3d at 771). Once a governmental entity establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the plea to the jurisdiction as a matter of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

The Texas Commission on Human Rights Act (TCHRA) prohibits employers from engaging in discriminatory employment practices against protected classes of people, including failure or refusal to hire a person because they are forty years of age or older. *See* TEX. LAB. CODE ANN. §§ 21.051(1), 21.101. The TCHRA waives a governmental employer's immunity from suit for violations under the act. *Alamo Heights*, 544 S.W.3d at 770 (citing *Garcia II*, 372 S.W.3d at 637); *see* TEX. LAB. CODE ANN. § 21.254 (permitting an employee to "bring a civil action against" their employer).

Because the TCHRA was modeled after federal statutes, Texas courts are guided by federal precedent interpreting those statutes. *Lara*, 625 S.W.3d at 52 (citing *Garcia II*, 372 S.W.3d at 634). Violations of the TCHRA can be established with either direct or circumstantial evidence, and for cases based on circumstantial evidence, Texas courts employ the three-part *McDonnell Douglas* burden-shifting framework. *Alamo Heights*, 544

7

S.W.3d at 781–82 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). First, the employee must establish a prima facie case, which gives rise to a rebuttable presumption that a statutory violation occurred. *Id.* at 782 (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–54 (1981)). The employer may then rebut this presumption by offering a legitimate, nondiscriminatory reason for the disputed employment action. *Id.* (citing *Burdine*, 450 U.S. at 254–55). This is a burden of production, not persuasion, and involves no credibility assessment. *Reeves v. Anderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Alamo Heights*, 544 S.W.3d at 782 (citing *Burdine*, 450 U.S. at 255–56). Each step of the *McDonnell Douglas* analysis is jurisdictional in nature. *Id.* at 783.

In the failure to hire context, a plaintiff may raise a genuine issue of material fact regarding pretext by presenting evidence that the employer's proffered reason is unworthy of credence or by showing that the plaintiff was clearly better qualified than the person selected for the position. *Little v. Tex. Dep't of Crim. Just.*, 177 S.W.3d 624, 631–32 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Evidence of relative qualifications must be specific and comparative rather than merely subjective and speculative. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 825 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)).

8

### III.  ANALYSIS

The parties agree that this is a circumstantial-evidence case that involves step three of the *McDonnell Douglas* burden-shifting framework because Kavanaugh presented a prima facie case of age discrimination and UTRGV provided evidence of a legitimate, non-discriminatory reason for selecting Perez over Kavanaugh; namely, that she was better qualified for the position.[3] *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881–82 (5th Cir. 2003) (holding employer's assertion that it promoted the "best qualified" two candidates constituted a legitimate, non-discriminatory justification for not promoting plaintiff).

The primary contention on appeal is whether Kavanaugh rebutted UTRGV's explanation by showing that he was clearly better qualified for the position than Perez. The parties also dispute whether Kavanaugh may demonstrate pretext by presenting

---

[3] Generally, stray remarks made by non-decision makers are insufficient to raise an inference of discriminatory intent. *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.). It stands to reason, then, that remarks made by non-decision makers are also insufficient to support an employer's assertion of a legitimate, non-discriminatory reason for an adverse employment decision.

Here, UTRGV relies on statements made by members of the search committee to support its position that Perez was better qualified. However, UTRGV may be overvaluing the significance of the committee's role in the hiring process. To be sure, the committee had some authority over the process by reviewing applications, selecting which candidates to interview, and then conducting those interviews. But in the end, the committee only made a recommendation to UTRGV's administration, and it was the administration that made the actual decision to hire Perez. There is nothing in the record to suggest that the administration was bound by the selection committee's recommendation. Moreover, the administration's decision to hire Perez may have aligned with the reasons given by the committee, or it could have been for a different reason all together. For example, the administration may have disagreed with the committee's conclusion that Perez was better qualified but instead selected her because of budgetary concerns, as Kavanaugh suggests. There is no evidence in the record explaining how the administration arrived at its decision.

In any event, Kavanaugh tacitly concedes that UTRGV met its evidentiary burden to present a legitimate, non-discriminatory reason for the adverse employment decision, so we will assume the same.

9

evidence that UTRGV engaged in a pattern and practice of age discrimination. UTRGV argues that, under Fifth Circuit precedent, an individual plaintiff may not use the pattern and practice method of proof to supplant the *McDonnell Douglas* burden-shifting framework, and thus, such evidence is not probative of pretext. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355–56 (5th Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Kavanaugh responds that pattern and practice evidence can be used *within* the *McDonnell Douglas* burden-shifting framework because such evidence is probative of whether the employer's explanation is worthy of credence. *See Metro. Transit Auth. of Harris Cnty. v. Douglas*, 651 S.W.3d 122, 135 (Tex. App—Houston [14th Dist.] 2021, no pet.) (finding genuine issue of material fact regarding whether employer's proffered reason for not promoting plaintiff was worthy of credence based, in part, on evidence of employer's "history of not promoting women"). Because Kavanaugh raised a fact issue on whether he was clearly better qualified than Perez for the position, we do not reach the pattern and practice question.

We begin by acknowledging that the "clearly better qualified" standard is difficult to satisfy. *See Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 279 (5th Circ. 1999) ("We reemphasize the general rule that differences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue."); *but see Manning v. Chevron Chem. Co.*, 332 F.3d 874, 884–85 (5th Circ. 2003) (Dennis, J., concurring) (questioning whether *Deines* remains viable after the

10

Supreme Court's decision in *Reeves*). This case, however, has an unusual wrinkle that affects how we view the relative qualifications of Perez and Kavanaugh—the parties dispute the very nature of the position.

UTRGV concedes in its brief that Kavanaugh is a talented grant writer, which is why the university hired him for grant writing positions both before and after the incident in question. UTRGV insists, however, that the position filled by Perez, although certainly related to grant writing, was more administrative in nature, and therefore, Perez, who had experience as a program manager for United Way, was better qualified than Kavanaugh for the position. In support, UTRGV relies on Salinas's description of the position as requiring a "technician" who can manage a program. The university also highlights certain job duties in the posting that it describes as administrative.

Kavanaugh disputes the committee's characterization of the position. According to Kavanaugh, after conducting the interviews, the committee reimagined the position to justify its preference for the substantially younger Perez. As proof, he points out that UTRGV posted the position as a "grant proposal writer," not as a program manager, which was Rock's position in CFR.[4] Beyond the job title, the substantive description of the position, both in scope and job duties, was identical to his former position with UTRGV as a "grant proposal writer" for the business college. Therefore, first and foremost, the

---

[4] UTRGV's Deputy Chief Legal Officer Priscilla Lozano described CFR's organizational structure as follows:

> In late summer and fall 2019 the Corporate and Foundations Relations office was comprised of four positions—two (2) Director of Development for Corporate and Foundation Relations positions; a Grant Development Manager position; and a Grant Proposal Writer position. The Grant Proposal Writer position SRGV 4089 was unfilled [and] was posted for hiring on August 23, 2019.

11

position required someone who would be "[r]esponsible for the development, writing, and editing of assigned grant proposals and reports," as the job posting stated. This is evident, Kavanaugh says, by the fact that candidates were required to submit samples of previous grant proposals and discuss their experience as grant writers during the interview, including the largest grant they had secured. Moreover, Kavanaugh explains that the job duties highlighted by UTRGV are part and parcel for any grant writer, which is why those same duties were also listed in the description of his former position as a grant writer at UTRGV. In other words, any experience Perez had in performing those particular job duties did not distinguish her in any meaningful way because Kavanaugh had experience performing those same duties over a much longer period of time.

UTRGV has failed to explain why it posted a position for a "grant proposal writer" with the same responsibilities normally associated with that position, and yet the committee later described the essential duties of the position as being administrative in nature. Viewing this disputed evidence in the light most favorable to Kavanaugh, we proceed to compare the relative qualifications of Perez and Kavanaugh with an emphasis on their experience as grant proposal writers, not administrators.[5] *See Miranda*, 133 S.W.3d at 228.

---

[5] Regardless, the record does not support the committee's conclusion that Perez's role as a "project manager" at United Way made her better qualified to handle administrative tasks and "work well in a fast-paced environment." From 2012 to 2015, during his tenure as "manager" of the Department of Institutional Grant Writers at the University of Texas Brownsville and Texas Southmost College, Kavanaugh oversaw a team of grant writers that secured more than $35 million in awards. More recently, Kavanaugh worked as a "Grants Director" supervising two grant writers and writing grant proposals "to support the 40 human service projects of [the] Catholic Charities of the Archdiocese of San Antonio." At most, Perez was equally qualified to handle any administrative tasks that may be associated with the position.

While both candidates met the minimum qualification of "[t]hree (3) years of related work experience with a proven track record in grant writing and program development," Kavanaugh had significantly more experience as a grant writer than Perez. In particular, Kavanaugh had twelve years of experience writing grants, while Perez had three years of experience. As UTRGV correctly points out, this fact alone is insufficient to demonstrate that Kavanaugh was clearly better qualified than Perez. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993).

However, of the two candidates, only Kavanaugh had the preferred qualification of working as a grant writer in a "higher education setting." In fact, Kavanaugh had spent nearly his entire career as a grant writer working in higher education for the University of Texas System, including writing grants "for every college & division" at UTRGV. Normally, the plaintiff's longer tenure with the employer would not establish that he was clearly better qualified than the selected candidate. *See Martinez v. Workforce Comm'n-Civil Rights Div.*, 775 F.3d 685, 687 (5th Cir. 2014) (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)). Yet, in this case, based on UTRGV's stated preference, Kavanaugh's extensive experience as a grant writer in the University of Texas System set him apart from Perez as the only candidate that exceeded the minimum qualifications. *See Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Circ. 2018) (holding plaintiff failed to meet clearly better qualified standard where *both* candidates "exceeded the minimum qualifications for the district supervision position, and neither candidate was clearly better qualified").

Finally, as indicated by the committee's questions, the performance of any grant writer is ultimately judged by the amount of funds they secure. In this regard, Kavanaugh's prior achievements far exceeded Perez's. The largest grant Perez had previously secured totaled $120,000, while Kavanaugh had secured one grant for $2.5 million and another for more than $1 million, as well as grants for $688,000, $500,000, and $299,000. This evidence is specific and comparative. *See Chandler*, 376 S.W.3d at 825. And, in the parlance of the Fifth Circuit, the disparity between Kavanaugh and Perez "jump[s] off the page and slap[s] you in the face." *See Deines*, 164 F.3d at 279.

Although any one of the above facts in isolation may be insufficient to raise a fact issue, viewing them collectively in the light most favorable to Kavanaugh, we agree with the trial court that a genuine issue of material fact exists as to whether Kavanaugh was clearly better qualified than Perez for the position.[6] *See Roberson-King*, 904 F.3d at 382 (holding that, where both candidates exceeded the minimum qualifications for a position, "[a]ny difference in qualifications between the two candidates does not create a genuine issue of fact that Roberson-King was clearly better qualified for the district supervisor position"); *Villarreal*, 620 S.W.3d at 905 ("If disputed evidence creates a fact question regarding a jurisdictional issue that also implicates the merits . . . a jury should resolve the issue." (citing *Miranda*, 133 S.W.3d at 227–28)). Accordingly, the trial court did not err in denying the plea, and UTRGV's issue is overruled.

---

[6] Kavanaugh also argues that because he was clearly better qualified than Perez, UTRGV failed to follow its RIF policy, which required UTRGV to give him priority consideration if the candidates were at least equally qualified for the position. Although this is an additional fact that may support an inference of pretext, the fact itself does not support Kavanaugh's contention that he was clearly better qualified than Perez.

## IV.   CONCLUSION

We affirm the trial court's order.

GINA M. BENAVIDES
Justice

Delivered and filed on the
23rd day of February, 2023.

15